Z. W. and others v. Horry County School District. We'll hear from the appellant. Thank you, Your Honors, and may it please the Court. My name is Mary Willis, and I represent the appellant, Mr. David Warner, who is here with me today, and his minor child, who I will refer to as Z. W. The issue in this case is a narrow one. The issue is whether the district court erred in holding that my client was required to exhaust the administrative remedies under the IDEA before filing this lawsuit alleging violations of Section 504 and Title II. And to answer this question, all we need to do is follow the guidance of the United States Supreme Court in Fry v. Napoleon Community Schools. In Fry, the court identified two hypothetical questions which, when answered in the affirmative, indicate a plaintiff's complaint does not seek denial of a free, appropriate public education, and therefore the exhaustion requirement is not required. In this case, the district court identified the Fry factors in those two hypothetical questions, but never actually applied them to the medical necessity claims that are alleged in our complaint. So if we turn to the first question that was identified in Fry, could we have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school, say at a public school? We could bring the exact same lawsuit against any other public facility if they refused to allow Z.W.'s ABA therapist to accompany him into those facilities to administer treatment. More importantly, his ABA provider already does accompany him into both public and private facilities to administer this treatment, and that is because autism affects him in every setting of his school. So to treat his autism, his neurological pediatrician from the Medical University of South Carolina prescribed ABA treatment as a medical necessity at an intensity of 40 hours per week to be administered across multiple settings, including school. What about the evaluation that the psychiatrist recommends? See, he says a school program utilizing an ABA approach. Shouldn't we infer by that that that at least brings in some kind of an educational approach in this matter? Well, the initial evaluation that was provided to my client when he was around five years old, it did recommend ABA-like strategies in the school setting. However, his autism has regressed significantly, and he started exhibiting severe maladaptive behaviors, and he went to a neurological pediatrician this time. And so the second letter came from a neurological pediatrician, whereas the first, I believe, was from a psychologist. And so after he developed, after his symptoms continued to regress, his neurological pediatrician decided he needed ABA treatment, medical-grade ABA treatment at 40 hours per week, which needed to also be administered in the school setting. And that's important because ABA treatment itself, by definition, is environmentally sensitive, which means that, well, because children with autism have difficulties generalizing behavior changes, and they behave differently in different settings. And so for children that are school-age, they spend the majority of their time at school. ABA treatment is ineffective, and the treatment plan does not work if they are not getting that treatment in school as well as out in the community, at home, and so forth. So similar to the deprivation of any sort of medically necessary care. I'm trying to follow that. You keep bringing up the word school, so that seems to indicate that education is part of this. Is that right? I think any time we are talking about something that a child needs within a school setting, education is obviously in some way related to the case in general. However, my client needs ABA treatment in the community. He receives it at home. He receives it at summer camp. He receives it in after-school programs. The only place right now that is prohibiting him from getting his prescribed treatment is the school right now. And the problem with that is that ABA treatment is ineffective altogether if it is not provided at the intensity that the doctor recommends, which for ZW is 40 hours per week. And if he can't get it in the school setting, any progress he makes outside of the school setting regresses. Can I ask you what my biggest concern about your position is, and tell me if I shouldn't be concerned about this, and if so, why? Why isn't the implication of your argument that any time a parent wants the child's own treatment provider to provide in-school treatment, they can just recharacterize it? Take the school nurse or the school psychologist or something like that, and they say, look, I know there's a school nurse and I know there's a school psychologist, but my child has very particularized needs, or I would just prefer they have their own person there rather than the school nurse or the school psychologist. And that essentially gives parents with the resources and the ability to do that to provide. Why should I not be concerned that you're essentially allowing wealthy parents to be able to say, I know the school has things for this, but I want my kid to have their own any time they want to? And I understand that that is a concern and it's a valid concern. The reason that it doesn't apply, and I don't think it'll open the floodgates to any speech pathologist or whoever the parent chooses to come in and provide these private services. I don't think that's what's going to happen, and I think it goes back to the nature of what medical-grade ABA treatment is and what it requires to be effective. And what it requires to be effective is it has to be applied at the intensity prescribed. Let me give you an example to maybe sharpen the point. Say that my child has a learning disability and I hire a private person to work with my child about their learning disability. And I say, I know the school has people who are there to work with children with learning disability, but it's really important that my child has the person I picked. So I would like my private tutor or whatever the correct term for such a person is. Does your position imply that they can do that? And if it doesn't, why doesn't it? And if it does, why should I not be concerned? My position does not imply that. I think it's specific to ABA treatment in and of itself and how it treats autistic children. That is different from children with different types of learning disabilities. And the reason I say that is because ABA treatment has to be supervised by one behavior-certified analyst under one treatment plan. And so if he is not getting that treatment at home by the same person, in the school by the same person, in the after-school care program, at summer camp, it is not effective. And so ABA requires a continuity of services, which I think is But what does that have to do with the IDEA exhaustion question? I mean, now maybe it's a reason why that claim would just fail under the Rehabilitation Act, but the answer you just gave to me doesn't seem to have anything to do with the IDEA exhaustion requirement. Am I missing something? Well, so I think the reason that the exhaustion requirement does not apply here is because we are asking for a medical service. But I can characterize the learning disability tutor as a medical service. I mean, I'm sure I could get a doctor who would characterize it that way if I wanted to. Well, the Supreme Court has held on multiple occasions that schools are not required to provide medical services under the ADA. And so I think to understand what medical-grade ABA treatment actually is and what we are requesting, it's important to understand that it's important because both state and federal initiatives have changed the game. They've changed the playing field. Parents can now get access to medical ABA treatment that has been funded both by Medicaid or private insurance companies that follow the AMA procedural codes. And both the insurance companies have agreed to pay for that in school because it has been deemed by medical professionals to be a medical necessity in order to treat autism and other disabilities as a whole. Can I ask you a question? I just want to make sure I understand this, where Judge Hyten started. I mean, there's two questions, right? One is whether, let's say, what was it, like a tutor? Learning disability tutor. In the end, the parent can prevail under the ADA or Section 504, and that strikes me as a really hard case to make. But then the other question is, well, do they have to exhaust that claim? And I would think if it's something like a tutor-type person, like you might well have to exhaust that claim unless the parent has come forward with a plausible allegation that this learning disability tutor needs to be with my child not only in school, but wherever my child goes 40 hours a week. Like if I'm sending him to the movies, that tutor needs to go to the movies. That might not be really a credible allegation. I would think that would be part of what would distinguish your case. At least as you have alleged it in the complaint, this is not a service that is geared toward learning. It's not about learning, at least not in its entirety. It's about safety and regulating emotions, and it extends well beyond school and well beyond the learning process. Isn't that an important distinction for you? That's a very important distinction, Your Honor. He requires this treatment across all settings, and that's really the only way that it is effective. And that really just goes back to the nature of what autism is, and it's that autistic children have difficulty generalizing their behaviors, and they behave differently in different settings. And so they require ABA treatment, medical-grade ABA treatment, supervised by a BCBA across multiple settings so that the therapist can respond, can first of all collect data, observe them, but then respond to help ameliorate some of the problem behaviors. And when it's only done in certain settings, if it's only done at home, or it's only done in the after-school care program, and he's not getting that care when he's in school, he regresses because he doesn't have that constant continuity of treatment which is required in order for the plan to be effective. And we're on a motion to dismiss, right? That's the posture here? That's correct, Your Honor. So, I mean, it doesn't strike me that I have to actually figure out whether that is right or not, whether ABA services are more educational or more non-educational. I mean, you've alleged it in your complaint. I don't understand there to be a dispute as to whether it's at least a plausible allegation. Do we have to, tell me, given this posture, how much of what you just said do I have to agree with for you to win the case? So, under the standard that was set forth in Frye v. Napoleon, essentially the question is whether or not our complaint is seeking access versus a challenge to the quality of the special education services that are being provided to ZW. And our position is that this is 100% a case about access. We have requested an accommodation from the school that his ABA provider have access to school to administer medically necessary treatment in the school setting. And you've done so by, at least, this arises from a 12B1 jurisdictional motion. Are you familiar with our case in AI where we say this is a claim processing matter? It's not a jurisdictional matter. Are you familiar with that? I am not, Your Honor. Well, we did say it in AI. And then there's a Mosley case out of the Seventh Circuit says a 12B1 is not the matter about which you will challenge this non-jurisdictional matter. You can only bring it up after an answer has been put in because it's an affirmative defense in this matter. Are you familiar with that? I am not, Your Honor. Think about it a little bit because it's fundamental to what we are dealing with here. KI just came out last year. And it turned upon the whole question of is this jurisdictional. Now, it creates a conundrum because in my view, a 12B1, you ought to be able to bring up something here. But if it's not jurisdictional, a 12B1 goes to jurisdiction, subject matter jurisdiction. Is that right? That's correct. And so if we have said this is not jurisdiction, you can't bring it up with a 12B1. You have to answer and make an affirmative defense on it. The question being is what would that affirmative defense look like? And maybe it converts over to from a 12B1 to a 12B6. And then you go to a Rule 56 summary judgment type thing because you need some evidence here as to whether it was exhaustive. Here's the situation. Here, though, looks to me as though your response to this doesn't even go to the question of whether you exhausted. Because the KI case and the Moser case turns on the fact that you in complaining this do not have to actually state that it's exhaustive. That's not your burden because there's an affirmative defense on it. But in answering this, you went straight to the whole business of as though, well, we didn't exhaust. You didn't say it, but it seems to be right on its face. Something tells me if I was to ask or someone asked directly, did you exhaust? You're probably going to say no. But ultimately, let's say you don't prevail today, can't you still go back and exhaust those remedies? Or can you? We certainly could go back and exhaust the administrative remedies under the IDEA. I think the problem with that is, well, first of all, there's been a lot of case law that has come out in the context of ABA therapy where parents have brought these claims all the way up to an ALJ, which is an incredibly timely and costly endeavor for any parent to undertake. And that the response from the ALJ has been, I don't have authority to make any rulings or decisions as it relates to medical necessity claims and access to the school. I want you, when you get ready for your rebuttal, I want you to kick that jurisdictional question around a little bit if you can. I don't know what kind of resource you got there to look at it. But it seems to me to be key in this case, at least something that all thought of. You didn't bring it up, but it's non-jurisdictional and comes up in this manner. How do we deal with it? But at least the keen issue of whether this fits under the FAPE situation or IDEA is before us. And I think your point, you've articulated that. Why don't we hear from the other side and let you come back because you've served some rebuttal time. We'll hear from the affiliate. Thank you, Your Honor, and good morning to the police and the court. Kick that can I just threw out in the middle of the road on jurisdiction. You are familiar with KI, aren't you? I am, Your Honor. This is not a jurisdictional matter, yet this is the 12B1. Isn't that a jurisdictional motion? Well, at the time it was made, yes. This was obviously before KI. Well, at the time it was made and apparently KI didn't make anything retrograde, just told you that's what it is. It is a jurisdictional motion. You can't do this by 12B1, can you? The district court can't make a ruling on exhaustion on a 12B1. He has to wait until you assert an affirmative defense and you've not even filed an answer. So there is no affirmative answer here, is there? Your Honor, the response to the complaint is a motion to dismiss. Right. And the motion to dismiss is based on failure to exhaust and is described... No, no, no. 12B1 is your motion, right? That's a jurisdictional motion. You didn't make a 12B6 motion on it. It was 12B1, right? That's correct, Your Honor. So you can't do that. Mostly says it. The 12th Circuit said you can't do it. I mean, the 7th Circuit says it. Well, just a factual matter, did you move to dismiss based only on 12B1 or 12B1 and 12B6? I'm going to actually look at the motion to answer your question. And what difference would it make if you did not make an affirmative defense of it? The motion to dismiss is under 12B1. I think that the question here becomes does ZI change completely the way school districts... Well, can an affirmative defense be asserted by motion as a 12B1? I don't think it can, but you tell me. You practice law a lot of it. Your Honor, I don't know the answer to that question. I know that whether it be 12B1, 12B6, or summary judgment, the fundamental issue here is one of exhaustion. Yes, and it is an affirmative defense for which it arises once you file an answer with it. And you've not done that. Your Honor, at the time the answer was filed, the law of this circuit, as I understand it, was that it was, in fact, jurisdictional. I think the answer was filed before Judge Quattlebaum's decision. Is exhaustion always an affirmative defense? I'm just sitting here trying to think about this. I don't think it always is. Is it under the Prison Litigation Reform Act? Is it under AEDPA? Is it under all kinds of administrative... I agree that Mosley does say it is normally an affirmative defense. It does not strike me as obvious that exhaustion is always an affirmative defense. Your Honor, I don't know the answer to that question. I think here, again, we're talking about a question of timing, of when the issue of exhaustion can be engaged. When I look at Rule 8, I don't look at exhaustion of administrative remedies as always an affirmative defense. I will confess I've not researched that issue. I don't know the answer to that. I can't flesh that out for the Court. But I certainly don't believe when I think of traditional affirmative defenses, I don't think of exhaustion as necessarily included in that list. I think that's what makes it difficult. K.I. says this is non-jurisdictional. It really puts us in a dilemma. Proceed with the merits of the issue. Your Honor, on that point, the Ninth Circuit has characterized the exhaustion requirement as a claims processing tool rather than jurisdictional for years. It goes back, I think, to 2009-2010. The substance of the issue, that is, whether exhaustion is required in a particular circumstance, that jurisprudence holds true across the circuits. What we're talking about here is a timing issue. I will shift to that exhaustion question. As the Court knows, the question here is, does the complaint seek relief that's available under the IDEA? I'm not sure that that's the question. I think it might matter. I thought after Frye the question was whether the complaint seeks relief for denial of a fate. I don't think it's the same question. I don't think there's any dispute that you look at the gravity of the complaint and you say, what does it ask for? Does it ask for educational services or does it ask for something different? It turns out this is not semantic. I don't think that's what Frye says. I understand your argument. Look, these services, ABA therapy services, are available under the IDEA in the right circumstances as related services. Under Frye, you have to exhaust. I just think that's the wrong question. Under Frye, the question is whether you are seeking relief for denial of a fate. Because even like, as the Court says in Frye, a service dog, a ramp, all of those things might be available under the IDEA under the right circumstances, but you're the master of your complaint. That's not what you went after. You did not sue for violation or denial of a fate. I just don't see how that can be the right question. There's no question that the complaint is based in an alleged denial of fate. Why other than because you say so? If you look at paragraph 16 of the complaint, the complaint says that the school district implemented a behavioral plan. We know that behavioral plans are part of the IDEA related services, special education and related services. Behavioral plans are part and parcel of IEPs and are the content of which and the adequacy of which are litigated in IDEA exhaustion all the time. Paragraph 16 of the complaint says and acknowledges that the school has implemented a variety of ABA like strategies to address ZW's behavioral problems. The complaint says, hey, what you're doing is inadequate. You're providing ABA like strategies, but our preference is for something different. We want a 40 hour one-on-one person. Up to 40 hours. The fundamental point here is that what they're seeking is a different or preferred method of delivering behavioral plan. There's been no discovery or anything here. The complaint actually alleges that what they need is this medical treatment for medical, social and emotional problems apart from the learning process to address development, regulation of emotions, ability to focus and interact, ability to maintain safety, not educational needs. And you think ABA services actually are specifically educational and I understand that, but these are the allegations of the complaint and I guess I don't see like maybe in discovery that bears out that you can prove that ABA services, this is not true. They're really all about the learning process, but that's not what's alleged in the complaint. The allegation in the complaint, the court is certainly familiar with the artful pleading warning that comes with Frye. They can call it a medical procedure all they want. What we do know is that ABA services can be ordered by hearing officers and that they are. We know that this court in 2018, excuse me, in 2005 in the Enrico County School Board versus ZP, the court described ABA as quote, a methodology for the education of children with autism. That's at page 301. The court also in the same opinion described ABA as an approach to teaching children. We know in the Heffernan case, which Judge Wynn, you were on that panel. We know in the Heffernan case, which came out of South Carolina, that the issue there was whether ABA services were sufficient to address behaviors. It was all taken up in the IDEA context because IDEA related services include developmental, corrective and other supportive services to assist a child with disability to benefit from a special education. Counsel on the other side said this is a therapy that's apparently being taught in other environments and that what they really want is the school is the one that won't let them come in and do it and that it really comes down to access. They're not seeking relief or what they're doing is they're trying to use the word access and conflate that with a wheelchair or a ramp. They're trying to refer and use the term access and make it like those two examples. There's a difference between ABA in the medical context. Autism is diagnosed in a medical context by psychiatrists using the term autism. The IDEA doesn't deal with medical diagnoses. It deals with classifications and eligibility for certain disabilities. They're not the same. What they are telling you is, and they say it straight up in the complaint, if a kid needs an appendectomy and the school won't let them have it, they're denying access. Their reasoning would require the appendectomy to be performed on the lunchroom table. What's the difference between physical versus behavioral disability? Or is there a difference? I don't know. I do know. What we do know is that this circuit has dealt with ABA therapy in the context of the sufficiency of IEPs and IDEA cases for years. The idea that this court or this circuit doesn't have experience or know that ABA is an educational methodology that is routinely addressed when parents challenge the adequacy of an IEP, the case law is replete with examples. Can I ask you to just walk through the two questions that Justice Kagan's opinion for ISIS were supposed to ask and ask why they don't indicate the plaintiff wins? Question one, could you imagine a request being made at a public library or at a public bus station? Is the thing the plaintiff is asking for something you could imagine being asked for at a public library? It seems to me the answer here is yes. Then the second question is, could you imagine a visitor to the school who is not a student asking for this thing? Here again, the answer strikes me as yes. Now, admittedly, Justice Kagan says the answer to these questions aren't always controlling, but they say these are a pretty good indication. Do you disagree that the answers to those questions here are yes, or do you think this is one of the rare situations where even though the answer to both questions is yes, it doesn't apply? I disagree with the answer to the questions. Let me make a distinction here. The plaintiff wants to capture the ask as, can I bring someone to the school? In other words, if I pay for it. That strikes me as another weird aspect of your claim, which is that the thing that the school is required to provide is a free and appropriate public education, and no one is asking you to pay for anything. It seems weird how that would be an idea claim for it to say that I want something, but I'm not going to ask you to pay for it. We know that who pays for it really isn't material. Who pays for it? If it's fake, the school is required to provide it. I think when you ask those two questions that Justice Kagan framed, you have to ask the question, could you require the public theater or the public library to provide it? That doesn't seem right at all. Take the facts of Fry itself. We talk about a person who has a dog that's assisting him. When Justice Kagan goes through that hypothetical, the hypothetical is not, could you require the theater to provide the dog? Well, here, we don't have a body of case law that addresses this question of whether you can be required to provide. I can tell you that a district court here in Maryland last year dealt with this issue in the context of a child with autism, and the parents wanted a communications facilitator to accompany the child at all times. And the court said, this is the District Court of Maryland, said, in this respect, the court cannot fathom how appellants could sue a library, community center, or courthouse for a certified RPM, that is, communications facilitator, for failing to provide KM a trained facilitator for their autistic visitors. So, again, if the court were to say that FAPE is, in fact, requires, if FAPE requires provision of up to 40 hours of services. How could we possibly say that? There's no IDEA claim in this case. I don't understand what you're saying. The IDEA claim, the question is. There is no IDEA claim. The question is, what does the complaint say? Does the complaint request relief that is educational, fundamentally? So you read this complaint as the plaintiffs seeking public financing of ABA services for their child. That's what they're asking for. Throughout the complaint, they refer to the educational process and the inadequacy of the educational process. I understand that, but I am actually, I am sort of surprised. I understand your argument for why, at bottom, the gravamen of this complaint, this is really about educational services, but I had not gotten from your brief that you think they are actually asking the government to pay for those services. I didn't mean to suggest that. What I'm suggesting, and I think that the complaint at paragraph 16, 17, 22, 31 and 42 makes it clear. As I described in 16, they acknowledge that they are dissatisfied with the nature of the ABA services provided by the IEP at the school. They say they don't like it. They want something different. They want their preferred approach. In paragraph 17, they question the credentials of teachers who are providing the services to the child. Can I, I'm sorry, I don't mean to cut you off, but can I ask you a question that genuinely perplexes me and I would like to get your views on it? When the district court grapples with this question, it's largely in this footnote three, when he says, look, okay, the plaintiff is actually arguing that if my therapist can't come with me to school, I can't come to school at all. Then I would have to choose between access to this school or receiving my necessary therapy and treatment, medically necessary treatment. And so this is a real access problem. And the district court says, no, it's not because you guys have conceded that the IDEA does in fact provide a remedy through the administrative process. And so I am ordering the defendant to afford the plaintiffs the IDEA's administrative remedy so that plaintiffs will have a choice. They won't have to forego medical treatment or remove the child from school. Is the district court ordering the school district to provide these services? As I read the court's order, Your Honor, the question is whether the relief, the ABA relief requested by the plaintiff could be provided by a hearing officer. Could it be ordered? The argument or the allegation is, hey, if you don't give us what we want, our kid doesn't get to go to school. And what the judge is saying is that hearing officers in the administrative process can determine what level and what type. That's not what it says. I mean, that would make perfect sense to me, but it doesn't say that. It says the defendant must afford this remedy so that the plaintiff will have a choice, will not have to forego medical treatment in order to attend school. I'm sort of slightly perplexed as to what the district court intended, and there seems to be at least a natural reading of this footnote that makes me wonder why we're even here. It sort of seems like plaintiff won. Well, again, I think the fundamental point is the IDEA administrative process can give these plaintiffs what they want. That power exists because the services requested are educational in nature. What the complaint seeks to do is bypass that process and go straight to Section 504 or to the ADA. So I'm just reading. So your answer to my particular question is just no. The only sensible way to read this footnote is I'm saying, go see what you can get under the IDEA and not, in fact, ordering the school district to provide a remedy under the IDEA. I think that's right. I don't think that the judge certainly, Judge Dawson isn't getting into the nitty gritty of the adequacy of the ABA services provided and how they might be different or better. He's simply calling out the false choice of what I want or my kid can't go to here. The complaint seeks a different type or level of educational service, of related service, as those services are defined in the IDEA. What you have here is a plaintiff trying to sidestep that and go straight to federal court to try to turn the federal courts into the experts on educational delivery, educational content, behavioral plans and so forth. They do that by trying to characterize this throughout as medical, medical, medical. But again, the schools provide education including ABA strategies. This court itself... So it is basically your position as I'm understanding it that if a service could be ordered under the IDEA, it could under the right circumstances count as related services under the IDEA. It per se may not be the basis for a complaint under the ADA or Section 504. Because I have trouble reconciling that with what Fry says. Certainly if the fundamental question there is, are they educational? If they are educational and that relief can be ordered, yes, it's IDEA. And we see that in this court's case. How do you reconcile that with Fry saying just because you could have brought an IDEA claim doesn't mean you have to. That's not the question. Whether you could have gotten this relief. The question is whether you are actually suing for violation of a faith. Denial of a faith, I'm sorry. The answer to the question is twofold. One, what they're actually suing for is determined by reading the complaint and what the gravity of the complaint is. Number two, when the relief requested is inextricably linked to education, even if it could be actionable under ADA or Section 504, you still have to exhaust IDEA. You can't say I can get this other places too in addition to IDEA. Therefore, I'm going to bypass IDEA. That's our position, Your Honor. Thank you. Thank you, Your Honor. Thank you, Your Honor. I will briefly try to kick around the jurisdictional question that you raised during my opening. I haven't read that case specifically, but I do think if the holding is that this is not a jurisdictional question, then it wouldn't be appropriate to affirm a decision dismissing the case on those grounds, on a jurisdictional ground. I think you're correct that that does put us in a bit of a conundrum now. I understand that case came out after Judge Dawson issued his order, but from what you told me during my opening, that would be my response to that. How do we dismiss this for lack of subject matter jurisdiction if the Fourth Circuit has now issued a case saying that this is not even a jurisdictional inquiry? I think if it is more of an affirmative defense, then I think the response would be that we are entitled to move forward with discovery. These are some of the issues that we are going to be dealing with at the lower court. It's going to be whether or not these do qualify as a medical service, which I wholeheartedly believe that they do. Then it will be his position that this is more of an educational approach. The case that at least he cited during his argument from the Fourth Circuit where ABA treatment was dealt with as an educational approach within the IDEA, that was a 2005 case. So much has changed in terms of ABA treatment for the treatment of autism over that time period. Not just in terms of medical professionals moving that treatment forward, but it's become the gold standard of treatment for kids with autism and adults with autism. That is why there have been so many states that have passed legislation now licensing BCBAs as medical professionals. That's why Medicaid, who is required to provide coverage for Medicaid in addition to private health care companies. In terms of whether or not the complaint was, we used certain words or didn't use certain words to try to get around whether or not we were seeking a denial of fate. The reason that I used words such as IEP and talked about the issues that led to my client filing this complaint is because there was a history that preceded this. It got to the point where my client realized he was not getting what the doctor ordered and he was entitled to it. That is when he asked for a reasonable accommodation under Section 504 in the ADA. That was denied without even any sort of investigation. Can I have some more information? Can I look at the medical records? So I think using certain words in the complaint was not my intent to dictate that this was a case about the quality of educational services. We are seeking access for his medical provider to administer treatment in the school setting to treat his disability. He receives that treatment in all other areas and aspects of his life. And it's no different than how Wonder Dog was in the Fry case. Wonder Dog also was with that disabled student inside the school and outside the school. We are not asking the school to provide anything at all. We are simply asking for access. Why does that matter if you offer to pay as opposed to the school providing it itself? Go back to Judge at least this position, something more likely to come from someone who has the means or the financial resources to do it as opposed to children who come from poor families. In this context, Your Honor, I think the reason that I have pushed that point is because of the progression in history of ADA treatment over the last couple decades because there has been so much work at both the state and the federal level to get insurance companies to step up and pay for these services because the medical professionals in the medical field are saying this is a medical necessity for a huge subset of kids with autism and it is the most effective treatment for them. And so I push the comment in my briefs and dealing with the school district is that we are not asking you to pay for anything at all. All of that funding is already set up through Medicaid and private health insurers. I think one thing, when claims do fall under the IDEA, the school district is required to pay for those. That is certainly something that is true. I don't think the fact that we are not asking the school to pay for it does or does not bring it outside of that claim. I think it brings it outside of an IDEA claim because we are seeking a medical service. Medical services the Supreme Court has held, a school district does not have to provide them. And so the medical professionals, his neurological pediatrician have all said he needs his treatment. It is a medical necessity. And we are just asking the school to step aside and let his provider come in and provide it. Thank you very much. Thank both of you. We have reinstituted our policy to come down and brief counsel and go to the next case. Thank you.
judges: James Andrew Wynn, Pamela A. Harris, Toby J. Heytens